UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TERRY WASHINGTON                                    CIVIL ACTION

VERSUS

EAST BATON ROUGE                             NO. 21-00192-BAJ-RLB
PARISH SCHOOL BOARD

## RULING AND ORDER

This is an employment discrimination case. Plaintiff's Supplemental, Amending, and Restated Petition alleges that Defendant East Baton Rouge Parish School Board ("the School Board") by and through its agents and employees, Principal Karen Triche and Assistant Principal ("AP") Robert Wells, harassed him based on his age, retaliated against him for opposing unlawful age-based discrimination, and ultimately constructively discharged him due to his age (over 40 years old). (*See* Doc. 6 at p. 4). Now before the Court is the School Board's **Motion for Summary Judgment (Doc. 22)**, which argues that Plaintiff's action must be dismissed because he has not shown that age motivated any adverse actions; rather, Plaintiff voluntarily resigned. (*See* Doc. 22-1 at pp. 11, 14, 17). Plaintiff opposes the School Board's Motion in its entirety. (Doc. 27). For the reasons stated herein, the School Board's Motion will be granted in part and denied in part.

1

## I.    BACKGROUND

### A. Summary Judgment Evidence

The parties agree to virtually nothing. However, "for purposes of this motion only, the School Board accepts Plaintiff's version of the facts where a dispute exists." (*See* Doc. 22-1 at p. 1 n.1). Accordingly, the following facts are drawn from Plaintiff's Statement Of Material Facts Genuinely in Dispute (Doc. 27-9, "Washington SOF"), and the record evidence submitted in support of these pleadings.

### i. Plaintiff's experience at Tara High School

Plaintiff is over the age of 40. (*See* Washington SOF at ¶ I. 1). Principal Triche and AP Wells are also over the age of 40. (*See* Doc. 27-8). Prior to applying to work at Tara High School, Plaintiff worked as a tenured teacher and coach for the School Board at other area schools. (*See* Doc. 39-3 at p. 5). The School Board does not hire employees to serve solely as athletic coaches; rather, coaching is an ancillary duty. (*See* Doc. 27-1 at p. 20). A team comprised of Principal Triche, Athletic Director ("AD") Barry Jackson, and others interviewed Plaintiff and decided to hire him at Tara High (Doc. 27-6 at p. 2–3). When Plaintiff applied for the teaching position at Tara High, it was clear that he also applied for, and ultimately received, the head football coach position. (*See* Doc. 27-1 at p. 25; Doc. 27-6 at p. 2). In January 2016, the School Board hired Plaintiff as a teacher for Tara High School. (*See* Doc. 39-3 at p. 41). The School Board paid the Plaintiff an additional 10% of his base salary for serving as the head football coach. (*See* Doc. 27-1 at p. 109). Notably, AP Wells began working at Tara

2

after Plaintiff was hired and was not involved in Plaintiff's hiring. (*See* Doc. 27-1 at p. 28).

Only the School Board possesses the authority to pursue disciplinary action against teachers. (*See* Doc. 27-2 at p. 19). As Principal, Triche possessed the authority to recommend to the School Board, when appropriate, the imposition of disciplinary action against teachers and coaches. (*See* Doc. 27-2 at p. 19). Principal Triche also possessed the authority to remove Plaintiff as head football coach at Tara High. (*See* Washington SOF at ¶ I. 10). There is no evidence in the record that Principal Triche ever recommended to the School Board that Plaintiff be disciplined, or that Plaintiff receive any formal disciplinary action while at Tara High. In his duel roles as teacher and head coach of the football team, Plaintiff was supervised by Principal Triche, AP Wells, and AD Jackson. (*See* Doc. 27-1 at p. 119–20; Doc. 27-3 at p. 8).

As teacher and head football coach, Plaintiff's primary duties included teaching classes, recruiting athletes to the football program, securing fields for games, preparing the field for games, hiring other coaches, and sometimes working as a part-time Dean of Students.[1] (*See* Doc. 27-1 at p. 25, 29, 58, 183). During Plaintiff's tenure as head coach, Tara High's football team achieved a total win-loss

---

[1] Neither party provided a complete overview of Plaintiff's duties as Dean of Students, but they seem to include assisting with student discipline. (*See* Doc. 27-1 at p. 127; Doc. 49-1 at p. 18).

record of 9-31.[2] (*See* Doc. 27-1 at p. 33). The team had a negative win-loss record prior to Plaintiff's tenure, and Plaintiff described the program as being "in shambles" when he started as head coach. (*See* Doc. 27-1 at p. 26). Principal Triche understood that Tara High was not "a championship team," and she was more concerned about the conduct and academic performance of the athletes. (*See* Doc. 27-6 at p. 4–5). Plaintiff was aware that Principal Triche was not concerned about his win-loss record. (*See* Doc. 27-1 at p. 116). While Plaintiff was head football coach, three to four students a year received football scholarships from colleges. (*See* Doc. 27-3 at p. 19). However, several disciplinary issues involving football students occurred during Plaintiff's tenure, and he frequently disagreed with AP Wells and Principal Triche about how such matters should be handled. (*See* Doc. 27-1 at p. 120–22).

For example, in 2017, two football players were caught stealing chicken wings from a nearby grocery store while in their Tara High football jerseys. (*See* Doc. 22-4 at p. 18). In 2018, two Tara High players quit the team in the middle of a game and entered the stands to cheer for the other team. (*See* Doc. 22-4 at p. 23–24). In 2019, a player was arrested and missed several practices, but still attempted to play in a game the night he was released from custody. (*See* Doc. 22-4 at p. 20–23). Several other football players were also arrested during Plaintiff's tenure as Tara High head

---

[2] As a result of an error by AD Jackson, Tara High forfeited three wins. However, those wins are included in Plaintiff's 9-31 win-loss record. (*See* Doc. 27-3 at p. 13–14). The error was related to a Tara High football player's ineligibility to play in games due to his failure to abide by rules mandated by the Louisiana High School Athletic Association. (*See* Doc. 49-3 at pp. 61–64).

football coach. (*See* Doc. 27-1 at p. 36). According to Principal Triche, players were also cutting classes, not wearing their uniforms in the manner required by school rules, and were frequently involved in altercations with other students. (*See* Doc. 22-3 at p. 31–32). Ultimately, Principal Triche and AP Wells themselves directly handled the disciplinary action imposed against such students, but Plaintiff believed that he should have been allowed to impose discipline against the football student-athletes in a manner he deemed appropriate, and that "administration should never get involved" in how he disciplined his players. (*See* Doc. 27-1 at p. 120–21).

Plaintiff and Principal Triche also disagreed on how Plaintiff managed the assistant coaches. Although Plaintiff had the authority to hire assistant coaches, Principal Triche "placed" Assistant Coach ("AC") John Robinson on Plaintiff's coaching staff. (*See* Doc. 27-1 at p. 31–32). Plaintiff objected to this assignment. *See id.* Principal Triche also thought Plaintiff did not appropriately delegate duties. (*See* Doc. 22-3 at p. 11–12). Even when Plaintiff became demonstrably ill during a 2019 football game, he refused to leave the field rather than turning over the coaching duties to his assistant coaches. (*See* Doc. 22-3 at p. 15–16).

Relatedly, Principal Triche disapproved of Plaintiff's refusal to allow others to help him set up the football field for games because she believed Plaintiff could not do everything himself. (*See* Doc. 22-3 at p. 20). Principal Triche also allegedly received complaints about Plaintiff from several assistant coaches, some of whom were

younger than Plaintiff. (*See* Doc. 27-6 at p. 12). To Principal Triche, all of this created the impression that the football team, the coaching staff, and Plaintiff were not "on the same page." (*See* Doc. 22-3 at p. 20). Principal Triche admits, however, that she did not pursue formal disciplinary action with Plaintiff. Rather, she claims to have had informal discussions with him about leadership and "how to better involve his coaches." (*See* Doc. 22-3 at p. 11). Plaintiff, however, denies ever receiving negative feedback about his football players or his alleged bad rapport with his assistant coaches from Principal Triche. (*See* Doc. 27-1 at p. 123).

### ii. Alleged discrimination and harassment

According to Plaintiff, almost immediately after starting work at Tara High, AP Wells and Principal Triche subjected him to "unwelcome, unabated age-based discrimination and harassment." (*See* Doc. 27 at p. 2).

Plaintiff avers that on a weekly basis AP Wells made comments about his age and inability to do his job because of his age. (*See* Doc. 27-1 at p. 89, 184–85). He points to four specific events as examples: In 2017, at the Tara High School Hall of Fame Induction ceremony, Plaintiff claims AP Wells said to him "Coach, I ain't know you can run like that, bet you can't run like that now." (*See* Doc. 27-1 at p. 85). Also in 2017, AP Wells made a comment about Plaintiff needing to slow down or risk having a heart attack that was overheard by Assistant Coach ("AC") Marqus Mitchell. (*See* Doc. 27-4 at p. 6). According to AC Mitchell, the comment was not meant maliciously. *Id.* In 2019, AP Wells, upon viewing an old photograph of Plaintiff,

remarked, "Coach, where you get this picture from? ... Coach, this an old picture. You don't look like this here. You look old. This not you." (*See* Doc. 27-1 at p. 49). Plaintiff claims that Principal Triche was present when this comment was made and that she laughed it off and said that AP Wells didn't mean anything by it. (*See* Doc. 27-1 at p. 50–51; Doc. 27-1 at p. 126). On May 24, 2020, during a Zoom call with Plaintiff and other teachers, AP Wells commented to Plaintiff, "Coach, man, look at you, man. Coach, you look bad. You look old. You need to do something about yourself." (*See* Doc. 27-1 at 47). Plaintiff admits he hadn't shaved that day and "was looking rough." *Id.*

Plaintiff also complains that many of AP Wells' actions towards him were calculated to secure his termination/retirement and replace him with someone younger. (*See* Doc. 27 at p. 2). For example, Plaintiff alleges that in July 2019, AP Wells initially denied Plaintiff's two-percent stipend of base pay for summer football work. (*See* Doc. 27-1 at p. 64). To get paid, Plaintiff contacted Human Resources and the matter was resolved. (*See* Doc. 27-1 at p. 64). In December 2019, AP Wells allegedly denied Plaintiff's request for lodging reimbursement at a coach's conference, although the School Board paid for other head coaches to attend. (*See* Doc. 27-1 at p. 71). On another occasion, AP Wells appointed a younger coach as the boys' head track coach, although Plaintiff wanted the job, substituted frequently as the interim boys' head track coach, and served as the girls' head track coach. (*See* Doc. 27-1 at p. 95).

When Plaintiff substituted as the boys' head coach, he did not get paid. (*See* Doc. 27-1 at p. 91–92).

Plaintiff confronted AP Wells about his comments and conduct and said on one occasion, "I know what you're doing." AP Wells allegedly replied, "What are you talking about, Coach? I'm in your corner." Plaintiff then said, "No, you're not in my corner. I know what you're trying to do." (*See* Doc. 27-1 at p. 59). Plaintiff also reported some of AP Wells' comments and conduct to Principal Triche, who claims she spoke to AP Wells about Plaintiff's complaints. (*See* Doc. 27-6 at p. 8).

Regarding Principal Triche, Plaintiff points to one specific example of an age-based comment. In 2019, after a football game where Plaintiff fell ill, AC Mitchell heard her say that Plaintiff was "too old to do the job." (*See* Doc. 27-4 at p. 2–3). Additionally, Principal Triche took various actions that, in Plaintiff's view, were intended to force his retirement. In Fall 2018, Principal Triche assigned Plaintiff to teach the "Journeys to Careers" class, which Plaintiff avers has a reputation as the class taught by teachers who were preparing to retire. (*See* Doc. 27-1 at p. 52–53). In Spring 2019, Principal Triche removed Plaintiff from performing duties as a Dean of Students, allegedly signaling AP Wells' desire to replace Plaintiff with a younger head football coach. (*See* Doc. 27-1 at p. 114). In January 2020, Principal Triche and AP Wells allegedly notified Plaintiff of a head coach position available at a private school in the city of New Iberia and suggested to Plaintiff that he should apply for the position. (*See* Doc. 27-1 at p. 103). To take a job in the private sector, Plaintiff would

8

have been required to retire from the East Baton Rouge Parish School System. *See id.* In February 2020, Principal Triche allegedly told Plaintiff that he should "move on" from grieving for his recently deceased wife, then suggested that they have a discussion about the direction of the football program. (*See* Doc. 27-1 at p. 86–87).

According to Plaintiff, the situation came to a head on May 18, 2020, during a phone call with Principal Triche. (*See* Doc. 27-1 at p. 44–45). Plaintiff told Principal Triche that he was having suicidal thoughts because the birthdays of his deceased wife and mother were approaching. *Id.* Principal Triche expressed sympathy but told him that after speaking with AP Wells, she decided to move the football program in another direction. *Id.* When Plaintiff asked why, Principal Triche allegedly replied that the other coaches couldn't relate to him and that the school needed to "go younger." She then asked Plaintiff to retire. *Id.* Plaintiff insisted that he wanted to coach until January 2023, to which Principal Triche replied, "Well that's not going to happen...I need for you to retire, either you do it or I'm going to do it for you." *Id.* Plaintiff perceived this comment as a threat. (*See* Doc. 27-1 at p. 80). However, Plaintiff also knew that Principal Triche was only referring to the head coach position, and that he could have remained at Tara High as a teacher. (*See* Doc. 27-1 at p. 56–57).

Two days later during a May 20, 2020 faculty Zoom meeting, Principal Triche was asked if any teachers were planning to retire. (*See* Doc. 27-1 at 46). She answered that two teachers had notified her of their retirement plans, and that she was waiting

9

on one other person to do so. Although Plaintiff believed that he was the teacher referenced in her statement, he admits that Principal Triche did not mention him or any other teacher by name. *Id.*

On May 26, 2020, during a meeting with the assistant coaches, Principal Triche removed Plaintiff as head football coach and named a younger coach as interim head coach. (*See* Doc. 27-1 at p. 59–60). Plaintiff was not in the meeting. He learned about it from the assistant coaches. *Id.*

In early June, Plaintiff sent an email to the School Superintendent and the Director of Human Resources informing them that Principal Triche told him he "needed to either resign or retire ASAP as to not put her in a position to make the decision for him." (*See* Doc. 27-1 at p. 142). After explaining the difficulties he experienced working with AP Wells and describing the February 2020 and May 2020 conversations with Principal Triche, Plaintiff wrote that he was resigning from the School Board effective June 8, 2020. *Id.* Notably, Plaintiff admits that this letter was the first and only time he reported the remarks and behavior of Principal Triche and AP Wells to the School Board. (*See* Doc. 27-1 at p. 50, 80). On June 24, 2020, the School Board approved his retirement. (*See* Doc. 22-10). On July 8, 2020, the School Board hired Hansoni Holland, who is under 40 years old, as Tara High's head football coach. (*See* Doc. 27-1 at p. 107). Thereafter, Plaintiff submitted Intake Questionnaires to the Equal Employment Opportunity Commission (EEOC) and the Louisiana

10

Commission on Human Rights (LCHR) on July 23, 2020 and filed a charge of discrimination on September 24, 2020. (*See* Doc. 27-8 at p. 1, 32).

## B. Procedural History

Plaintiff initiated this action on February 24, 2021 in the 19th Judicial District Court for the State of Louisiana, alleging that the School Board, through Principal Triche and AP Wells, discriminated against, harassed, retaliated against, and ultimately constructively discharged him due to his age, violating the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34, the Louisiana Employment Discrimination Law (LEDL), La. R. S. 23:301, *et. seq.*, and the Louisiana Whistleblower Statute (LWS), La. R.S. 23:967. (*See* Doc. 1-3 at pp. 2–4). Thereafter, the School Board timely removed the case to this Court and now moves for summary judgment. (Doc. 1-2; Doc. 22). The School Board argues that Plaintiff cannot show that age was a motivating factor in any adverse employment decision suffered by Plaintiff, that many of Plaintiff's harassment and retaliation allegations are time-barred, and that Plaintiff voluntarily resigned. (*See* Doc. 22-1 at pp. 9–18). Plaintiff opposes the School Board's motion in its entirety. (Doc. 27).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that, "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether the movant is entitled to judgment as a matter

11

of law, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in their favor. *See Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). After a party moves for summary judgment, the non-movant must set forth specific facts showing there is genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes." *Minnis v. Bd. Of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 873 (M.D. La. 2014). Rather, the Court simply asks whether the evidence in the record is sufficient for a reasonable jury, "drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). If the answer is yes, the motion for summary judgment must be denied. *See id.*

On the other hand, the non-movant cannot satisfy their evidentiary burden by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III.    DISCUSSION

#### A. Issue in Plaintiff's Petition

Before addressing the merits of Plaintiff's claims, the Court must address a significant issue in Plaintiff's Petition.

In Plaintiff's Opposition (Doc. 27), Plaintiff writes, "[t]he LEDL, La. R.S. 23:312(D), contains its own retaliatory provision. Defendant is silent as to whether it challenges summary judgment as to plaintiff's claim in this regard. Any argument otherwise is waived." (*See* Doc. 27 at p. 24 n.102). However, upon careful review of Plaintiff's original and amended Petition, Plaintiff did not plead a claim of retaliation under LEDL, La. R.S. 23:312(D). Rather, each Petition alleges, "[t]he actions and deliberate inactions of defendant constituted illegal discrimination and harassment in violation of the Louisiana's Employment Discrimination Law, La. R.S. 23:301, *et seq.*, ADEA, 29 U.S.C. §623(a), age-based retaliation under the ADEA, 29 U.S.C. §623(d), and reprisal under La. R.S. 23:967, including retaliatory harassment and constructive discharge." (*See* Doc. 6 at ¶ 12).

La. R. S. 23:312(D) is separate and distinct from the ADEA, 29 U.S.C. § 623(d), its federal counterpart. Having already afforded Plaintiff an opportunity to amend his original petition, and recognizing that at this stage of the litigation prejudice will result to the School Board if the Court permits Plaintiff yet another opportunity to amend his petition, the Court must hold the Plaintiff to what is described in his Supplemental, Amending, and Restated Petition. Having failed to properly plead an

age-based retaliation claim under LEDL, the Court must disregard Plaintiff's arguments as to that claim.

## B. When Was Plaintiff's Charge of Discrimination "Filed" ?

As an initial matter, the Court must address the issue of the timing of Plaintiff's charge of discrimination with the EEOC and, in turn, which claims are properly before the Court.

For ADEA claims, the filing date is significant because "[i]n Louisiana, a Plaintiff has 300 days from the date of the alleged discriminatory conduct to file a charge of discrimination with the EEOC." *See Minnis*, 55 F. Supp. 3d at 874 (citing *Janmeja v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. College*, 96 Fed. Appx. 212, 214 (5th Cir. 2004)). Thus, under the ADEA, any alleged discriminatory conduct occurring or claims arising prior to 300 days of filing are time-barred.

The parties agree that Plaintiff's EEOC charge of discrimination form was signed on September 24, 2020.[3] (*See* Doc. 22-11; Doc. 27-8 at p. 32). Measured against this date, any actions occurring prior to November 29, 2019, are barred from the Court's review.

---

[3] A discrimination charge is considered "filed" for purposes of the ADEA on the date the EEOC receives the charge, not the date the charge is signed or mailed. *See Taylor v. Gen. Telephone Co. of the Southwest*, 759 F. 2d 437, 441–42 (5th Cir. 1985). However, neither party has raised this issue. Thus, for purposes of the motion *sub judice*, the Court assumes the EEOC filing date is the date Plaintiff signed or submitted his EEOC documentation.

Plaintiff, however, argues that the submission of his Intake Questionnaire forms to the EEOC and LCHR on July 23, 2020 constitutes the actual filing date of his charge of discrimination. (*See* Doc. 27 at p. 21 n.97; Doc. 27-8 at p. 1).

In support of his argument, Plaintiff cites *Equal Emp. Opportunity Comm'n v. Vantage Energy Servs., Inc.,* where the U.S. Court of Appeals for the Fifth Circuit held that an employee's Intake Questionnaire qualified as a charge, based on the Supreme Court's *Holowecki* test. 954 F.3d 749, 754 (5th Cir. 2020) (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)). The Fifth Circuit instructed that an employee's Intake Questionnaire may act as an EEOC Charge if it: (1) precisely identifies the parties; (2) generally describes the action or practices complained of; and (3) and indicates that the employee intends to file a charge of discrimination and/or authorizes the EEOC to investigate the alleged discrimination. *See Vantage*, 954 F.3d at 754.

Here, Plaintiff's July 23, 2020 Intake Questionnaires identified the School Board and Principal Triche as the sources of the alleged age-based discrimination and generally described Plaintiff's claim of "forced retirement." (*See* Doc. 27-8 at pp. 3, 7). But unlike the employee in *Vantage*, and unlike what Plaintiff asserts in his Memorandum in Opposition to the Motion,[4] Plaintiff *did not* check Box 2 on his Intake

---

[4] In relevant part, Plaintiff's Memorandum in Opposition to Motion for Summary Judgment asserts:
   Like in *Vantage*, Mr. Washington checked Box 2 to his Intake Questionnaire stating
   that he wanted to file a Charge of Discrimination which was later verified by executing
   a notarized "Summary Document" drafted by the EEOC Investigator.
   (*See* Doc. 27 at p. 21 n.97).

Questionnaire, indicating that he wanted to file a charge of discrimination. (*See* Doc. 27-8 at p. 5). However, under EEOC regulations, "[a] charge may be amended to cure technical defects or omissions, including [the] failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments ... will relate back to the date the charge was first received." *See* 29 C.F.R. § 1601. 12(a). *See also Edelman v. Lynchburg College*, 535 U.S. 106, 118 (2002) (upholding the EEOC's relation-back regulation). According to Plaintiff's EEOC charge records, Plaintiff's Box 2 technical defect was cured on September 14, 2020 during an interview with EEOC investigators where Plaintiff verified he intended to file a charge of discrimination against the School Board. (*See* Doc. 37-8 at pp. 3, 5). Thus, Plaintiff's failure to check Box 2 on his Intake Questionnaire is not fatal to his claims. In sum, Plaintiff's EEOC Intake Questionnaire was sufficient as a charge of discrimination, and ADEA claims arising 300 days prior to July 23, 2020 are timely by virtue of the EEOC's relation-back regulation. *See* 29 C.F.R. § 1601. 12(a). However, any ADEA claims filed prior to September 27, 2019 are time-barred.

Under the LEDL, claims are subject to a prescriptive period of 12 to 18 months, depending on whether an investigatory suspension period applies. *See* La. R. S. 23:303(D). To compute the tolling of prescription of Plaintiff's claims under the LEDL, the Court begins its analysis by considering the date Plaintiff's cause of action accrued, which is when Plaintiff filed his charge of discrimination, and then determines how much time expired before the EEOC issued the right to sue letter.

*See Clark v. Auger Servs., Inc.*, 443 F. Supp. 3d 685, 711 (M.D. La. 2020). As noted, Plaintiff's July 23, 2020 Intake Questionnaire constitutes the filing of his charge of discrimination, and the EEOC issued the right to sue letter on May 5, 2021, which is nine months later. (*See* Doc. 6 at p. 4). Thus, pursuant to La. R. S. 23:303(D), Plaintiff is only entitled to a maximum six-month suspension. The prescriptive period began to run on June 30, 2020, the date of discharge identified on Plaintiff's EEOC form and the last possible date of an alleged discriminatory act. The 18-month prescriptive period ended on or about December 30, 2021, so the LEDL claims asserted in Plaintiff's February 23, 2021 Complaint are timely.

However, Plaintiff's reprisal claim under LWS is not subject to the same filing date rule or prescription period standard as his claims under ADEA and LEDL. Instead, because La. R.S. 23:967 does not specifically impose a prescriptive period standard, Plaintiff's reprisal claim "is subject to the general one-year prescriptive period for delictual actions provided in La. Civ. Code art. 3492." *Nolan v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 01-175 (La. App. 5 Cir. 6/27/01), 790 So. 2d 725, 733. Prescription begins to run from the day the injury was sustained, which is June 30, 2020, the date of discharge listed on Plaintiff's EEOC form. Because Plaintiff filed suit on February 23, 2021, which is within the one-year prescriptive period, his LWS reprisal claim is timely.

### C. Whether the ADEA and LWS Claims Were Administratively Exhausted

The School Board argues that Plaintiff's ADEA claim of age-based retaliation and LWS claim of reprisal were not administratively exhausted and thus are not properly before the Court. (*See* Doc. 22-1 at p. 17). In support, the School Board cites to Plaintiff's September 24, 2020 EEOC charge of discrimination form and points out that Plaintiff failed to include an allegation of retaliation or reprisal. (*See* Doc. 22-1 at p. 17 (citing Doc. 22-11)). Plaintiff also failed to include retaliation or reprisal claims in his July 23, 2020 Intake Questionnaires to the EEOC and LCHR. (*See* Doc. 27-8). In his Memorandum in Opposition to Summary Judgment, Plaintiff does not assert a defense to the School Board's exhaustion argument, other than to offer the conclusory statement, "[Plaintiff] exhausted all of his administrative remedies and none of his claims are prescribed." (*See* Doc. 27-8 at p. 25). Nevertheless, the Court will examine the record to determine whether Plaintiff administratively exhausted his retaliation and reprisal claims under the ADEA and the LWS, respectively.

Under the ADEA, the exhaustion of administrative remedies by filing a charge of discrimination with the EEOC is a precondition to seeking judicial relief. *See* 29 U.S.C. § 626(d). In *Walton-Lentz v. Innophos, Inc.*, the Fifth Circuit held that "[t]he administrative-exhaustion requirement is also considered met for any other claims within 'the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" 476 F. App'x 566, 569 (5th Cir. 2012) (citing *Pacheco v. Mineta*, 448 F. 3d 783, 789 (5th Cir. 2006)). "Federal district courts

within Louisiana, including this Court, have found that administrative remedies were not exhausted [ ] when the Plaintiff failed to 'check the box' and allege any facts supporting the retaliation claim." *Clark*, 443 F. Supp. 3d at 708.

Here, Plaintiff did not check the retaliation box on his July 23, 2020 EEOC Intake Questionnaire, he did not circle "retaliation" on his July 23, 2020 LCHR Intake Questionnaire, and he answered "No" when asked if he engaged in activity protected by ADEA. (*See* Doc. 27-8 at pp. 3, 6, 30). Furthermore, in his charge of "forced retirement," Plaintiff did not allege any facts that would have put the EEOC or the School Board on notice of a retaliation claim. Instead, Plaintiff claimed he was forced to retire because Principal Triche wanted a younger head football coach, not because Principal Triche or the School Board retaliated against him for engaging in protected conduct. (*See* Doc. 27-8 at p. 18). Thus, the Court concludes that Plaintiff's retaliation claim under ADEA cannot reasonably be expected to grow out of his discrimination charge and therefore was not administratively exhausted. Accordingly, the Court lacks jurisdiction over Plaintiff's ADEA retaliation claim and it must be dismissed.

However, on its face, the LWS does not feature an exhaustion requirement. *See* La. R.S. 23:967. This is also supported by case law. *See, e.g., Crowe v. Se. Cmty. Health Sys.*, No. CIV.A. 10-2838, 2014 WL 1456352 (E.D. La. Apr. 15, 2014) (discussing the elements of the LWS with no mention of exhaustion as a requirement). Thus, Plaintiff's reprisal claim under the LWS is properly before the Court.

### D. Age Discrimination under AEDA and LEDL

Under the ADEA, it is unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prove an ADEA violation, an employee must show by a preponderance of the evidence "that age was the 'but-for' cause of the challenged employer decision." *Tagliabue v. Orkin, L.L.C.*, 794 F. App'x 389, 393 (5th Cir. 2019). An employee can offer direct or indirect evidence as proof of discrimination. *See id.* Here, Plaintiff offers sufficient direct evidence. (*See* Doc. 43, p. 16).

Direct evidence is evidence that proves the fact in question without inference or presumption. *See McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 457 (5th Cir. 2019). Plaintiff argues that the workplace comments by Principal Triche and AP Wells are direct evidence of age discrimination. (*See* Doc. 27, p. 13–14.) In *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, the Fifth Circuit identified a four-factor test to determine whether comments in the workplace constitute direct evidence or only "stray remarks." 778 F. 3d 473, 476 (5th Cir. 2015). To be considered direct evidence, comments must be: (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision. *See id.*

20

Here, the Court concludes that Principal Triche's comment to Plaintiff on the May 18, 2020 phone call may be accepted as direct evidence of age discrimination. According to Plaintiff, when Plaintiff asked why she wanted to remove him as head football coach, Principal Triche replied: "Well, the coaches can't relate to you...Coach, we just need to go younger." (*See* Doc. 27-1 at p. 45). As alleged, Principal Triche's comment requires no inference or presumption that age played a role in Plaintiff's alleged constructive discharge. It also satisfies the *Etienne* test for workplace comments offered as direct evidence of discrimination. Factors one, two, and four are easily met: Principal Triche's comment was related to Plaintiff's age; she said it proximate in time to Plaintiff's alleged constructive discharge; and the comment is related to the Plaintiff's alleged constructive discharge.

The School Board argues that factor three is not met here because Principal Triche "lacked the authority to compel Plaintiff to retire or take any adverse employment action against him." (*See* Doc. 29). While it is undisputed that, per School Board policy, Principal Triche lacked the formal authority to fire Plaintiff, Plaintiff's central claim is that Principal Triche *constructively* fired him. Here, at the summary judgment stage, such evidence tending to show that Plaintiff may have been constructively discharged is sufficient to allow his age discrimination ADEA claim to proceed. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012). *See also Hawkins v. Frank Gillman Pontiac*, 102 F. App'x 394, 397 (5th Cir. 2004).

To prove constructive discharge, "an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). In determining whether a reasonable employee would feel compelled to resign, courts typically consider whether the employee has been subjected to: (1) a demotion; (2) a salary reduction; (3) a reduction in job responsibilities; (4) reassignment to menial work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or to humiliation by the employer, that is calculated to encourage an employee's resignation; or (7) has been offered early retirement or continued employment on less favorable terms. *See id.* These factors may be considered separately or in combination. *See id.*

Because Plaintiff filed his EEOC charge on July 23, 2020, any alleged discriminatory acts occurring prior to September 27, 2019 are time-barred and cannot form the basis for Plaintiff's constructive discharge claim. However, viewing the remaining evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff has proven constructive discharge sufficient to survive summary judgment. Five of the seven elements are present.

Principal Triche's removal of Plaintiff as head football coach satisfies factors one, two, and three. It resulted in a reduction in Plaintiff's status and rank at Tara High because it reduced his salary by 10% and eliminated certain job responsibilities. Furthermore, taken in combination, Principal Triche's and AP Wells' successive

comments on May 18, 20, and 24 of 2020 satisfy factors six and seven. Principal Triche's comment, "I need for you to retire, either you do it or I'm going to do it for you," is more than merely an offer of retirement, it suggests termination. This statement, combined with AP Wells' comments about Plaintiff's appearance and age in front of other teachers during the Zoom meeting and Principal Triche's comment that she was waiting for one other person to retire, is enough to create a material dispute regarding whether Plaintiff was subjected to badgering, harassment, and humiliation calculated to encourage his resignation.

In sum, because Plaintiff has proven direct evidence that age was a "but-for" cause of his alleged constructive discharge, his age discrimination claim under ADEA survives summary judgment. And, because Louisiana courts routinely analyze state law discrimination claims under the same framework and jurisprudence as federal claims, Plaintiff's LEDL age-based discrimination claim also survives summary judgment. *See generally Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271 (5th Cir. 1989).

### E. Age-Based Harassment under AEDA and LEDL

To maintain an age-based hostile work environment claim under the ADEA, Plaintiff must establish that (1) he was over the age of 40; (2) he was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part

of the employer. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (citing *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830 (6th Cir. 1996)).

In support of his hostile work environment claim, Plaintiff cites to the age-based, discriminatory comments and actions of AP Wells and Principal Triche. (*See* Doc. 27 at p. 23). Plaintiff avers that this behavior was continuous over his four-year tenure at Tara High. In response, the School Board argues that many of the alleged age-based comments, including the specific comments by AP Wells in 2017, are time-barred. Without reaching the merits of this issue, and even assuming, *arguendo*, that Plaintiff can prove elements one, two, and four, the Court concludes that Plaintiff's age-based harassment claim must be dismissed because Plaintiff cannot prove element three.

To "satisfy the third element of a prima facie case, a plaintiff must demonstrate that the harassment was objectively unreasonable." *Dediol*, 655 F.3d at 441. And to determine whether conduct is objectively offensive, courts consider the totality of the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.* (citing *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393 (5th Cir. 2007)).

Here, Plaintiff alleges that the evidence amounts to "weekly ageist commentary," deprivation of his job duties by Principal Triche and AP Wells because

24

of his age, and "active attempts to force him into retirement." (*See* Doc 27 at p. 24).
Even taking these allegations as true and viewing them in the light most favorable
to Plaintiff, they do not rise to the level of objective offensiveness contemplated by the
standard.

"Frequent incidents of harassment, though not severe, can reach the level of
'pervasive,' thereby altering the terms, conditions, or privileges of employment such
that a hostile work environment exists." *Lauderdale v. Texas Dep't of Crim. Just.,
Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007). "Put differently, the required
level of severity or seriousness varies inversely with the pervasiveness or frequency
of the conduct." *See Dediol*, 655 F.3d at 442. Here, the alleged weekly discriminatory
actions and age-based comments of Principal Triche and AP Wells were not as
frequent as the conduct in other cases where the Fifth Circuit has found evidence
supporting a hostile work environment claim. *See Dediol*, 655 F.3d at 442 (finding
that a "half-dozen daily times of remarks [ ] support an actionable claim for age
harassment"). Nor did their conduct amount to the level of *severe* conduct the Fifth
Circuit considers to be examples of objectively unreasonable harassment. *See id.* at
441–42 (concluding that profane comments such as "Get your old f*****g a** over
here" and "old mother******" are sufficiently severe to create a hostile working
environment).

Furthermore, Plaintiff has not offered evidence that AP Wells' and Principal
Triche's comments and actions were *physically* threatening, humiliating, or that they

25

impacted his work performance. In fact, regarding his work performance during the relevant time period, it must be noted that Plaintiff points out that Tara High won more football games in the period leading up to his alleged constructive discharge than any other year of his tenure as head football coach. (*See* Doc. 27 at p. 2). Thus, the totality of the circumstances weighs against a finding that Principal Triche's and AP Wells' alleged harassment was objectively unreasonable such that it impacted his performance. As a result, Plaintiff cannot prove that he was subjected to a hostile work environment while working for the School Board. His age-based harassment claims under ADEA and LEDL must be dismissed.

### F. Reprisal Claim under LWS

The parties dispute whether the School Board adequately addressed or waived its opposition to Plaintiff's state law reprisal claim in its summary judgment motion. In its Memorandum, the School Board argues that "[r]eprisal under La. R.S. 23:937 is analyzed under the same framework as federal retaliation," signaling that it asserts the same arguments against both claims. (*See* Doc. 22-1 at p. 17 n.6). But according to Plaintiff, his "reprisal claim under La. R. S. 23:967 is textually different than the ADA [sic] and does not employ the same framework." (*See* Doc. 27 at p. 24 n.103). He then argues, "Defendant's failure to separately address the elements of plaintiff's La. R. S. 23:967 claim is fatal." *See id.*

Upon review of the caselaw, the Court cannot find any federal or state law precedent that directly addresses the analytical similarities or differences between

retaliation under the ADEA and reprisal under the LWS. However, contravening Plaintiff's assertions, these courts have held that retaliation standards under other federal anti-discrimination statutes, such as Title VII and the ADA, are "materially indistinguishable" from the standard governing reprisal under the LWS. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 n.1 (5th Cir. 2007). *See also Dobyns v. Univ. of Louisiana Sys.*, 2018-0811 (La. App. 1 Cir. 4/12/19), 275 So. 3d 911, 927 ("For the same reasons we find that Dr. Dobyns prevailed on her retaliation claim under the ADA, we find that Dr. Dobyns experienced a reprisal as a result of disclosing a prohibited practice in accordance with La. R.S. 23:967.").

Plaintiff also argues that reprisal under LWS "seems to offer broader protections than its federal counterpart," but here, the LWS is not broad enough for Plaintiff's reprisal claim to survive summary judgment. *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1026 (5th Cir. 2011). The language of the statute is clear that "an employee is required to advise the employer of the alleged violation before having a cause of action." *Porto v. TBC Grand Bayou*, LLC, 2019-1376 (La. App. 1 Cir. 5/11/20), 303 So. 3d 1060, 1064. Here, it wasn't enough for Plaintiff to silently oppose the conduct of Principal Triche and AP Wells. Something more affirmative is required. Plaintiff failed to inform the School Board of the alleged age discrimination, so his reprisal claim under the LWS must be dismissed. *See id.* (affirming trial court's dismissal of plaintiff's reprisal claim at the summary judgment stage where plaintiff failed to inform employer of the alleged discrimination).

IV.   CONCLUSION

Summary judgment, particularly in the context of discrimination cases, is about evidence. After reviewing the record carefully, the Court finds that Plaintiff has submitted enough evidence to create a material dispute regarding his age discrimination claims under the ADEA and the LEDL. However, for the reasons offered, no other claims survive.

Accordingly,

**IT IS ORDERED** that the School Board's **Motion for Summary Judgment (Doc. 22)** is **GRANTED in part.**

**IT IS FURTHER ORDERED** that Plaintiff's age-based retaliation claim under ADEA, 29 U.S.C. § 623(d), is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's age-based harassment claim under ADEA, 29 U.S.C. § 623(a), is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's age-based harassment claim under LEDL, La R. S. 301, *et. seq.* is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's reprisal claim under LWS, La. R. S. 23:967 is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that in all other respects the School Board's

Motion is **DENIED**.

Baton Rouge, Louisiana, this 19th day of December, 2022

JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA